CULPEPPER, Judge.
This is a suit for damages arising out of an accident in which plaintiff’s automobile was struck by the truck of defendant’s insured. From an adverse judgment on the merits plaintiff appeals.
The accident occurred during hours of daylight in a rural area on U. S. Highway 71 a few miles north of Bunkie, Louisiana. At that location the highway is straight and level, is paved with asphalt 24 feet in width and runs east and west, although it eventually leads south to Bunkie. A graveled road, known as “Bayou Boeuf Road’' runs into the highway from the north forming a T-intersection. Along the south side of the highway, beginning at the intersection and running back in a westerly direction, there is a wide graveled shoulder, used principally by customers of Newman’s-Nursery, which is located on the south side of the highway about 200 feet west of the intersection.
Just prior to the accident plaintiff, who1 was 75 years of age, had been parked at Newman’s Nursery. As he left he drove in an easterly direction along the wide graveled shoulder down to the intersection. He testified he stopped about 5 feet from the pavement, looked in both directions and saw defendant’s large truck and trailer approaching on the highway from the west, at a distance of about 300 yards. Plaintiff says he then crossed the highway and was entirely on the gravel road, with the front end of his automobile about 20 feet from the north edge of the pavement, when the truck struck the center of the left side of his automobile knocking it side-ways a distance of 68 feet into an onion patch.
On the other hand, the truck driver testified: as he approached the nursery, he-saw plaintiff driving along the graveled shoulder; he blew his horn and began to-slow down from 45 MPH; as the truck neared the intersection plaintiff’s vehicle suddenly turned across the highway toward' the gravel road; the truck driver hit his brakes hard and cut to the left but was unable to avoid striking the automobile about in the center of the highway.
The truck driver’s version of the accident is strongly corroborated by three disinterested eyewitnesses. Mr. Newman and one of his employees were standing in front of the nursery, about 200 feet from the intersection, and heard the truck’s horn or brakes and looked up and saw the collision. Both of these witnesses testified positively that Mr. Harris attempted to cross the highway immediately in front of the truck and *27 “there was no way for the truck driver to -avoid the accident. These witnesses also -testified that the point of. impact was about in the center of the highway but that plain'tiff’s vehicle was literally lifted off the highway and knocked toward the north side of the pavement. The third eyewitness was Mr. Ernest, who was approaching the intersection from the east in his car. He ■also testified that plaintiff tried to cross the Tiighway at an unsafe distance in front of the truck and there was no way for the truck driver to avoid the accident. A fourth eyewitness was Howell Elkins, a ■passenger in the truck, who also said he ■saw the collision and that it happened in the manner described by the truck driver.
Also corroborating the truck driver were .75 feet of skidmarks left by the truck. These skidmarks started at about the center of the highway and proceeded a distance of 75 feet to a point located in the gravel road about 3 feet north of the edge of the pavement. These skidmarks would certainly indicate that the truck was very •close to the intersection and traveling at a reasonable speed when Mr. Harris created this emergency.
Plaintiff’s principal argument is based on the testimony of several witnesses who went to the scene after the accident -and found gouges in the road, broken glass, droppings from underneath the fenders and other ■debris which indicated to them that the point of impact was in the gravel road about three feet from the north edge of the pavement, From this evidence plaintiff argues that when he started across the highway the truck must have been several hundred feet to the west and for some unknown reason, instead of simply proceeding in its own lane down the highway after plaintiff had crossed, it left the highway and hit plaintiff after he was on the gravel road.
: As the district judge has pointed out in a well considered written opinion, such a version of the accident is highly improbable. If the truck had not applied its brakes and skidded the last 75 feet, it-would obviously have hit plaintiff’s vehicle at a higher speed and at a time when plaintiff had traversed a shorter distance of the highway.
Furthermore, as pointed out by able counsel for defendant, if the truck was 300 yards (or 900 feet) up the highway when plaintiff started across at an average of about 10 MPH, the truck would have had to been traveling at a speed of about 120 MPH in order to strike the automobile after it had traversed the distance of about 34 feet to the point of impact urged by plaintiff.
It may be that the precise point of impact was not in the center of the highway but was instead in the north side of the highway. However, such a circumstance cannot lessen the effect of the testimony of three disinterested eyewitnesses, in addition to the truck driver and his passenger, that Mr. Harris entered the highway immediately in the path of the truck at a time when the driver could not avoid a collision. The skidmarks substantiate this version of the accident. Even if most of the glass and debris were found near the north edge of the pavement, this circumstance can be explained by the testimony of Mr. Newman and his employee, that the automobile was lifted off the highway and literally thrown forward by the impact.
We have no difficulty in concluding that this accident was caused solely by the negligence of Mr. Harris in failing to yield the right of way and pulling out directly in front of the approaching truck at a time when it was unsafe to do so. See the very similar case of Croom v. Pittsburgh Plate Glass Company, 148 So.2d 123 (2nd Cir.La.App.1962) and the many authorities cited therein.
Counsel for plaintiff also seeks to invoke the doctrine of last clear chance. Our above factual findings show clearly that this doctrine has no application here because the truck driver did not actually discover, nor should he have discovered, plaintiff’s *28 position of peril at a time when he could have avoided the accident. Dean v. Pitts, 133 So.2d 917 (2nd Cir.La.App.1962). The truck driver was traveling in his own lane of traffic, on the right of way thoroughfare, at a lawful and reasonable speed. He had actually sounded his horn to warn plaintiff of the truck’s presence and there is nothing to show that the truck driver knew or should have known that plaintiff was going to suddenly enter the highway in the path of the truck until plaintiff actually did so.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against plaintiff appellant.
Affirmed.