LOTTINGER, Judge.
This is a suit for property damages resulting from an automobile accident. The Lower Court gave judgment in favor of petitioner, and the defendant has taken this appeal.
The accident occurred on December 25, 1947, at about 3:00 o’clock P.M., on Louisiana Highway No. 29 at the intersection of said highway with Trinity Road. Louisiana Highway 29 is a highly traveled artery, whereas Trinity Road is a private plantation road. The site of the accident is in Assumption Parish, about two and one-half miles below Napoleonville, Louisiana. The automobiles of petitioner and defendant were proceeding northerly from Thibodaux, Louisiana, toward Napoleonville, Louisiana. Petitioner was proceeding at about ten or fifteen miles per hour with the intention of turning, left into Trinity Road. Defendant was in the rear of petitioner and claims that he was traveling at about forty-five or fifty miles per hour. As defendant attempted to pass petitioner, petitioner executed his left turn, and the rear left of petitioner’s car was struck by the right front portion of defendant’s car. The damages to petitioner’s car was agreed upon at the sum of $472.92 by stipulation of counsel. Petitioner filed suit against defendant, J. W. Booth, Jr., and his liability insurer, General Accident Fire & Life Assurance Corporation, Ltd. Damages were awarded to petitioner, and defendant has appealed.
Louisiana Highway No. 29 is a paved highway of 18 feet in width. Trinity Road is a private unimproved road. The ■accident occurred on a clear day and on a straight stretch of highway. The parties admitted that the highway was straight for a distance of at least one-half mile south of the point of impact, and there was nothing to obscure the vision of either of the parties.
Petitioner testified that he looked before ■he turned left, but did not see anyone in his rear. He stated that he did not give a left-hand turn signal because it was a cold day and the windows were up, and, furthermore, he saw no one coming. As to the position of his car at the time of the impact, petitioner said:
“I think I was straddle of the black line with the front end aiming to get off the highway. I think I was fully on the highway at the time but I was trying to get off. I was straddle the black line. I probably was in the middle of the road.”
On this score, petitioner’s testimony is corroborated by Patrolman Waguespack, who investigated the accident. Patrolman Waguespack testified that the impact took place in the left, or western, lane of Highway No. 29. In connection with his testimony, petitioner drew a sketch of the position of his car at the moment of the impact, and the said sketch shows the extreme front right and extreme left rear portions of his car to be on the center line of the highway. In other words, according to the admissions of petitioner, his car was in the very center of the highway at the time of the impact.
We feel that the evidence presented shows without any question of a doubt, that the petitioner, at the very least, was guilty of contributory negligence.
*628 .Let us assume that petitioner was traveling ten miles per hour at the time of the accident. According to Blashfield Cyclopedia of' Automobile Law and Practice, a car going ten miles per hour would travel 14.5 feet per second. Assuming that the defendant was traveling at a speed of 60 miles per hour, he would travel 88 feet per second. To be generous in favor of petitioner', if we were to assume that it took him a distance of twenty feet to make the arc prior to the impact, then defendant would have been only a distance of about 132 feet from the point of impact at the time petitioner commenced his turn, or about 110 to 120 feet behind the petitioner at the time. Certainly then, according to the figures, the defendant was only a short distance behind the petitioner and there was no reason whatsoever for the petitioner to have failed to notice the proximity of defendant’s car. Blashfield further shows that a car going at a speed of 60 miles per hour would take a total distance of 226 feet to come to a dead stop. This distance is made up of 66 feet reaction time and 160 feet actual braking time.
The only conclusion we can make, in the face of the above distances, is that the plaintiff was guilty of attempting a left turn when he knew, or should have known, that the defendant was only a short distance to his rear.
Counsel for petitioner has cited Spencer v. Crain, La.App., 53 So.2d 416 and '.Roberson v. Rodriguez, La.App., 186 So. 853, in support of their claim of negligence on the part of defendant: The Spencer case was a city case and may be distinguished from the present case in that the present accident occurred in wide open country. The speed limit in the present case was 60 miles per hour, and defendant had a right to be proceeding at said speed. In the Spencer case, the city speed limits were invoked, and defendant was found to be driving at an excessive rate of speed. The Roberson case involved a rear-end collision, which, of course, has nothing to do with the present situation.
We furthermore do not believe that the doctrine of last clear chance is applicable under the present' factual situation. The evidence shows that defendant was only a short distance from petitioner when petitioner commenced his turn. Blashfield shows that it was impossible for defendant to come to a stop. We do not believe that the defendant had any opportunity whatever to attempt t'o avoid the accident. He had absolutely no warning that the petitioner intended to turn left until the turn itself was executed, and the -testimony of petitioner himself shows that he had just begun his turn when the impact occurred.
The Statutory Law of this state appears to be very clear as is provided in LSA-R.S. 32:235, subd. A as follows:
“The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicle or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way- is clear.”
It is likewise provided in LSA-R.S. 32:236, subd. A as follows:
“The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement.”
It is further provided in LSA-R.S. 32:237, subd. E as follows:
“The driver of a vehicle entering a public, highway from a private road or entering a private road.from a public highway shall yield the right of way to all vehicles approaching on the pub- *629 lie highway and to all pedestrians prop-' erly walking thereon.”
It is the well settled jurisprudence of our state that a person who attempts to make a left turn on the public highways of the ■state must ascertain before turning that the turn can be made safely. The defendants have properly pleaded the contributory negligence of the plaintiff and we feel'that the facts in this case conclusively show that the petitioner was guilty of at least contributory negligence, and that the judgment of the Lower Court should be reversed.
For the reasons assigned, the judgment of the Lower Court will be reversed, all costs to be paid by petitioner.
’ Judgment reversed.